# Supreme Court of Texas

No. 20-0725

Patrick Von Dohlen, Brian Greco, Kevin Jason Khattar, Michael Knuffke, and Daniel Petri,

*Petitioners,*

v.

City of San Antonio,

*Respondent*

On Petition for Review from the
Court of Appeals for the Fourth District of Texas

JUSTICE BLACKLOCK, joined by JUSTICE DEVINE, concurring in the judgment.

I disagree with the Court's opinion, which concludes that the plaintiffs failed to state a claim under Chapter 2400 of the Government Code. I ultimately agree, however, with the Court's judgment, which reverses the dismissal of plaintiffs' claims and remands the case for repleading. I therefore respectfully concur in the judgment.

The San Antonio city council voted in March 2019 to exclude Chick-fil-A from the San Antonio airport because of Chick-fil-A's religious views on marriage and its support for religious organizations

whose beliefs about marriage differ from the city council's. In response, the Legislature enacted Chapter 2400 of the Government Code, colloquially known as the "Save Chick-fil-A law," which took effect on September 1, 2019. The plaintiffs in this case immediately sued the City of San Antonio, employing Chapter 2400 just as its supporters seem to have intended—to "save Chick-fil-A," at least at the San Antonio airport.

According to the Court, the plaintiffs cannot plead a violation of Chapter 2400 by pointing to the city council's vote to exclude Chick-fil-A. The problem for the plaintiffs, as the Court sees it, is that Chapter 2400 did not go into effect until after the vote. All agree, of course, that the vote itself cannot have violated a law that did not exist when the vote was taken.[1] The problem for the Court's approach, as I see it, is that the city council's vote was not an isolated act of discrimination that had come and gone by the time Chapter 2400 went into effect. Instead, the vote established a forward-looking policy under which city staff were directed to pursue the exclusion of Chick-fil-A from the airport's concessions contract. *See Plaintiffs' Original Pet. & Application for Temp. Injunction* ¶ 40.[2] This unambiguous instruction from the city council gave all involved—including the plaintiffs and the courts—

---

[1] Whether the city council's vote violated the U.S. or Texas Constitution is another matter, one that is not at issue here.

[2] The petition alleges, "Councilmember Treviño then moved to approve the agreement with Paradies Lagardère, but with an amendment [that] would direct the City's staff to work with Paradies Lagardère in replacing Chick fil A with another vendor." *Plaintiffs' Original Pet. & Application for Temp. Injunction* ¶ 40. The petition further alleges that the council approved the agreement with the forward-looking amendment proposed by Treviño. *Id.* ¶ 47. The meeting minutes attached to the petition indicate that the council did so. *Id.* Exh. 14.

sufficient reason to believe the City would, after the effective date of Chapter 2400, continue to carry out its announced policy of excluding Chick-fil-A. Any acts in furtherance of that exclusionary goal would surely qualify as a violation of Chapter 2400, which broadly prohibits "any adverse action" against "any person" to "withhold, reduce, exclude, terminate, or otherwise deny any . . . contract" based "wholly or partly" on the person's "contribution, donation, or other support provided to a religious organization." TEX. GOV'T CODE §§ 2400.001(1)(A), .002.

I agree with the Court that governmental immunity bars this lawsuit unless the plaintiffs "actually allege[]" a violation of Chapter 2400. *Mission Consol. Indep. Sch. Dist. v. Garcia*, 372 S.W.3d 629, 636 (Tex. 2012). This means pleading facts that fully state a viable claim under the statute creating the immunity-waiving right of action. Bare recitation of statutory buzzwords is not enough. Thus, I agree that the plaintiffs can "actually allege[]" a violation of Chapter 2400 only "by pleading facts that state a claim thereunder." *Id.* I disagree, however, with the Court's conclusion that the plaintiffs' petition does not state an actionable claim under Chapter 2400.

The Court is correct that the petition points to no particular action by the City to pursue its exclusionary policy after the effective date of Chapter 2400. But the absence of such an allegation does not doom the petition. We typically do not require plaintiffs seeking injunctions against unlawful government policies to plead facts demonstrating that the policy has already been carried out. *See In re Abbott*, 601 S.W.3d 802, 812 (Tex. 2020) ("A plaintiff does not need to be arrested and prosecuted before suing to challenge the constitutionality

of a criminal law."). To the contrary, we require plaintiffs to plead not a past act of enforcement under the challenged law but only that "there exists a credible *threat* of prosecution thereunder." *Id.* (emphasis added) (quoting *Babbitt v. Farm Workers Nat'l Union*, 442 U.S. 289, 298 (1979)). This requirement flows from the nature of the injunctive relief available in such cases. Courts cannot order the government not to do something it has already done, but they can order it not to continue doing such things in the future. It follows that plaintiffs seeking prospective injunctions, as these plaintiffs do, must allege a credible threat of the *future* enforcement they want enjoined.

Chapter 2400 goes out of its way to incorporate this well-known framework for pre-enforcement challenges to threatened government action. In addition to outlawing "adverse action" on the basis of religion, it also authorizes suits in response to a "threatened violation" of its prohibition on adverse action. TEX. GOV'T CODE § 2400.003(a).

The petition credibly alleges that the exclusionary, discriminatory effects of the city council's vote would continue to be felt after Chapter 2400 went into effect.[3] True, the petition assumes that

---

[3] The Court "presume[s] that the City would comply with Chapter 2400, until the contrary is shown." *Ante* at 18 (emphasis removed). But there is no basis for making generous presumptions about the City's reaction to Chapter 2400 when the City left no doubt that it continued to disagree with plaintiffs' view that its continued exclusion of Chick-fil-A violated Chapter 2400. According to the City's brief in the court of appeals, filed April 22, 2020, "The City of San Antonio does not believe that any statement or action taken on March 21, 2019 would constitute a violation of Chapter 2400, even if the statute had been in effect at that time." Although I agree with the background presumption that courts should assume the government will follow the law, I do not agree with a presumption, unsupported by the record, that the City of

4

City employees are busy following the city council's instructions to pursue, by contract, the exclusion of Chick-fil-A. But surely this is a permissible assumption.[4] The city council made its desires quite clear and voted to give forward-looking direction to the city staff. The City—not the plaintiffs—is the party in possession of information about *how* the City is carrying out the city council's instruction. The plaintiffs' only obligation is to plead facts establishing a credible threat the City will

San Antonio agreed with the plaintiffs' view of the City's obligations under Chapter 2400. It quite obviously did not. If the City had come into court and recanted its intention of excluding Chick-fil-A because of the enactment of Chapter 2400, that would be a different matter. But every indication is that the parties remained at odds about the City's legal obligations under Chapter 2400 well after its enactment. Information outside the record indicates that it was not until the Department of Justice intervened that the City was compelled to adjust its position. *See* Letter from U.S. Dep't of Just. to Att'y Gen. Ken Paxton, Re: Complainant v. San Antonio International Airport (Sep. 10, 2020), https://www.texasattorneygeneral.gov/sites/default/files/images /admin/2020/Press/Paxton%20Inf%20Res%20SAT%202019%200182%202009 09.pdf.

[4] Information outside the pleadings indicates that, since the time the petition was filed, (1) the federal government may have taken corrective action against the City, (2) the City may have dropped its opposition to Chick-fil-A's presence at the airport in response to the federal government's action, and (3) Chick-fil-A may have dropped its desire to open a location at the airport. These developments surely change the complexion of this lawsuit, and the parties should have brought them to the Court's attention because of their potential ramifications for the Court's jurisdiction over some or all of the plaintiffs' claims. Nevertheless, these intervening facts are not directly relevant to the question at hand, which is whether the plaintiffs' live pleading triggers Chapter 2400's waiver of immunity. To answer that question, we look to the facts pleaded, without reference to later factual developments. However, because of the many intervening factual developments potentially bearing on the continued viability of plaintiffs' claims, I agree with the Court's decision to remand the case for repleading.

5

continue to carry out its announced policy. This petition easily clears that hurdle.

If the City had adopted an ordinance permanently outlawing Chick-fil-A at the airport because of its beliefs, we would not require a plaintiff challenging the ordinance to plead facts demonstrating that the City had already taken concrete steps toward carrying out its new ordinance. Instead, we would require only the pleading of a credible threat of future enforcement of the ordinance. I fail to see how this case is any different. Of course, in this case the City announced its exclusionary policy by contract, not by ordinance. But that makes no difference. Modern governments often advance their preferred policies by contract just as surely as by statute or ordinance. When those policies violate the law, prospective protection in the courts should be equally available no matter the caption on the offending government document. *Cf. Adarand Constructors, Inc. v. Pena*, 515 U.S. 200, 213 (1995) (holding that policies covering government contracting are subject to equal-protection review).

Although I disagree with the Court's opinion for the reasons stated, I nevertheless concur in its judgment reversing the dismissal of the plaintiffs' claims and remanding the case for repleading.

James D. Blacklock
Justice

**OPINION DELIVERED:** April 1, 2022

6